## AMERICAN FAMILY CORPORATE AGENT AGREEMENT

entered into separately by and among

**AMERICAN FAMILY MUTUAL INSURANCE COMPANY,
AMERICAN FAMILY LIFE INSURANCE COMPANY,
AMERICAN STANDARD INSURANCE COMPANY OF WISCONSIN**

of

Madison, Wisconsin, severally, (the "Company")

and

_____STEVEN GRAHAM_____ AGENCY, INC.,* a ____MINNESOTA____
(State of Incorporation)

corporation, (the "Agent") and all of the shareholders of the Agent on the date of this agreement, jointly and severally, (the "Shareholders").

All parties agree to be bound by the provisions of this agreement.

This agreement is effective as of ____JANUARY 1, 1996_____ subject to the licensing requirements set forth in Section 2 of this agreement.

Any amendments, endorsements or schedules attached to this agreement become a part of this agreement.

Signed on behalf of the Company as of the Effective Date.

_____
*Authorized Representative*

Signed by the Agent as of the Effective Date.

____STEVEN GRAHAM_____ AGENCY, INC. *

by ___[signature]_____
*President of Agent*

For value received, and to induce the Company to enter into the foregoing agreement with the Agent, the undersigned individuals, jointly and severally, hereby guarantee the performance by the Agent of all the terms and conditions contained in this agreement to be performed, kept and observed by the Agent, including but not limited to the unconditional payment of all amounts and debts due from the Agent, and hereby waive demand, protest, and notice of non-payment of any and all said indebtedness, liabilities, and obligations. The undersigned further covenant that over 50% of the voting shares of the Agent are and at all times will remain owned by the President.

___[signature]_____
*Shareholders of Agent*

---

\* The Company requires that a corporate agency's name (as stated in its charter or articles of incorporation) must contain the President's first name and last name or first initial and last name or first initial, middle initial and last name, followed in any case by the words "AGENCY, INC.". This name must be inserted on the blank line.

Edition: April 1995
AGREINC
(All States)

AMERICAN FAMILY MUTUAL INSURANCE COMPANY
AMERICAN FAMILY LIFE INSURANCE COMPANY
AMERICAN STANDARD INSURANCE COMPANY OF WISCONSIN

1

**EXHIBIT A**

## GENERAL PROVISIONS

This agreement has been entered into by the Company with the Agent in reliance upon the warranties and representations of the Agent and Shareholders and their agreements that:

(1) The following person(s) are all of the Shareholders of the Agent:

| NAME | ADDRESS | PERCENTAGE OF INTEREST |
|---|---|---|
| no stock issued | | |

(2) The President of the Agent, having full managerial authority and responsibility for the operating management of the Agent as provided for by its by-laws, shall at all times be a person approved by the Company. The Agent will advise the Company, in writing, at least forty-five (45) days prior to the election or appointment of such President of the identities and qualifications of all candidates being considered for election or appointment as President. The Company will be deemed to have approved those candidates with respect to which it has not notified the Agent of their unacceptability, in writing, within thirty (30) days after receipt of the Agent's advice that the candidates are being considered for appointment.

(3) The person or persons designated by the Agent as licensed sales representative(s) of the Agent shall at all times be a person or persons approved by the Company. The Agent will advise the Company, in writing, at least forty-five (45) days prior to appointment of a licensed sales representative of the identities and qualifications of all candidates being considered for appointment as licensed sales representative(s). Unless the Company, within thirty (30) days after receipt of such advice, notifies the Agent in writing that a candidate is unacceptable to the Company, the Company will be deemed to have approved such candidates.

(4) All notices of the identities and qualifications of candidates for the position of President or licensed sales representative shall be sent by Certified Mail, return receipt requested, to the Regional Vice President for the state in which the Agent is incorporated.

(5) The President of the Agent shall at all times during the term of this agreement a) devote all or substantially all of his or her occupational efforts, on a full time basis, to his or her duties and responsibilities to the Agent and under this agreement; and b) own over fifty percent (50%) of the voting shares of the Agent.

Edition: April 1995
AGREINC
(All States)

AMERICAN FAMILY MUTUAL INSURANCE COMPANY
AMERICAN FAMILY LIFE INSURANCE COMPANY
AMERICAN STANDARD INSURANCE COMPANY OF WISCONSIN

2

**SECTION 1.**     1. Definitions

"Mutual" means American Family Mutual Insurance Company.
"Life" means American Family Life Insurance Company.
"Standard" means American Standard Insurance Company of Wisconsin.
"Companies" mean Mutual, Life and Standard collectively.
"Agent" means the business corporation identified on the first page of this agreement.
"President" means the current principal executive officer of the Agent, as defined in the statutes of the Agent's state of incorporation and in the Agent's bylaws.
"Effective Date" means the date set forth on the first page of this Agreement.

**SECTION 2.**     2. Licensing Requirements

Agent shall not represent the Company as agent under this agreement until it (if possible) and its President are licensed to act as an insurance agent for all appropriate lines in accordance with the laws of the state of Agent's incorporation.

**SECTION 3.**     3. Company Obligation

Any and all compensation due Agent in accordance with schedules of compensation applicable to Standard, Life and any affiliates or subsidiaries of Mutual shall be paid by and become the sole and complete responsibility and legal obligation of Mutual.

**SECTION 4.**     4. Agent's Agreements

**Agent's Agreements**     Agent Agrees:

**Exclusive Representation**
a. To exclusively represent only those insurance companies which are parties to this agreement and their subsidiaries.

aa   To provide at least one licensed sales representative whose principal occupation will be the fulfillment of Agent's obligations established by this agreement. The fulfillment of the agreement shall be the Agent's principal business and neither the Agent nor any licensed sales representative employed by the Agent will directly or indirectly write or service insurance for any company other than an American Family subsidiary or affiliate or through any governmental or insurance industry plan or facility, or for any Agent or broker, except in accordance with the terms of any written consent the Company may give the Agent.

**Licensing**
b. To solicit and place applications only for the kinds of insurance for which it (if possible) and its President are licensed to act as an insurance agent.

**Eligible Business**
c. To solicit and place in the Company and subsidiaries all eligible applications.

**Collection of Premium**
d. To deliver policies and to collect and record as trustee for the Company premiums and other monies due the Company in accordance with Company rules. This money belongs to the Company at all times and Agent shall hold such money only as a fiduciary, in trust, as the absolute property of the Company.

**Premium Trust Fund**
e. To maintain a premium fund trust account in a bank or similar financial institution, which an authorized representative of the Company may audit from time to time, in which Agent will promptly deposit premiums and other monies and upon which Agent will draw checks transferring such money to the Company.

Edition: April 1995
AGREINC
(All States)

AMERICAN FAMILY MUTUAL INSURANCE COMPANY
AMERICAN FAMILY LIFE INSURANCE COMPANY
AMERICAN STANDARD INSURANCE COMPANY OF WISCONSIN

3

| | | |
|---|---|---|
| **Fidelity Bond** | ee | To provide a fidelity bond with a minimum limit of $25,000, and acceptable to the Company, covering all Agent's employees, licensed sales representatives and shareholders participating in the affairs of the Agent in favor of the Company. |
| **Compensation Adjustment** | f. | That, if any application or part thereof is rejected or any policy canceled and the Company has returned any premium paid thereon, or if any reduction in premium occurs, or if any overpayment in compensation to Agent occurs, Agent's compensation on the amount returned or credited to the policyholder or the amount overpaid Agent, shall be charged to Agent and Agent shall owe such sum to the Company. |
| **Agent's Authority** | g. | That Agent shall not have the authority to extend the time of payment of any premium or alter, waive or forfeit any of the Company's rights, requirements or conditions in any policy of insurance or otherwise obligate the Company in any way except as stated in this agreement or expressly authorized under the rules and regulations of the Company or previously authorized in writing by the Company. |
| **Profitability and Production** | h. | To meet the Company's production, profitability and service requirements. |
| **Mode of Conduct** | i. | To maintain a good reputation in the Agent's community and to direct Agent's efforts toward advancing the interests and business of the Company to the best of Agent's ability, to refrain from any practices competitive with or prejudicial to the Company and to abide by and comply with all applicable insurance laws and regulations. |
| **Sums Payable** | j. | That any sum payable to Agent by any one of the Companies may be credited against any sum owed by Agent to any one of the Companies whether a premium transaction, promotional or advertising expense, office operational expense or obligation of any other kind to the Company and that any of the Companies making a payment under this provision on Agent's behalf to any of the Companies shall be discharged from further liability to Agent to the extent of the sum so paid, and Agent shall be discharged from liability to the Company receiving the payment to the exter. of the payment so received. |
| **Agent's Expenses** | k. | The expense of any office, including rental, furniture and equipment, signs supplies not furnished by the Company, salaries of Agent's employees, telephone, postage, advertising and all other charges and expenses incurred by Agent in the performance of this agreement shall be at Agent's discretion and paid by Agent. |
| **Company Property** | l. | That all copies of policies, endorsements, policy records, manuals, materials and supplies furnished Agent by the Company shall be and shall remain the property of the Company and Agent shall be deemed the bailee thereof for the use and benefit of the Company and shall keep and preserve such property except as consumed in normal agency operations. When this agreement is terminated, Agent shall deliver within 10 days to the Company all such property together with all copies thereof in Agent's possession and control. |
| **Use of Company Identification** | m. | To use the Company names, symbols, trademarks or any other types of identification whether the same or similar as created by the Company only as authorized by the Company, and when this agreement is terminated, to cease using or benefiting from the use of the Company names, symbols, trademarks or other identification. |
| **SECTION 4.1** | 4.1 | Shareholder Agreements |
| **Shareholder Agreements** | | The Shareholders of the Agent agree: |

Edition: April 1995
AGREINC
(All States)

AMERICAN FAMILY MUTUAL INSURANCE COMPANY
AMERICAN FAMILY LIFE INSURANCE COMPANY
AMERICAN STANDARD INSURANCE COMPANY OF WISCONSIN

4

a. That no Shareholder will sell, assign or transfer any of his or her stock to any person without the prior written consent of the Company, and that said stock will be placed in escrow with an escrow holder approved by the Company, with instructions not to release said shares without written instructions from the Company.

b. To furnish the Company at the time of execution of this agreement with a resolution of Agent's Board of Directors, which has been ratified by the shareholders of the Agent, stating that no stock of the Agent then unissued will be issued to any person without the prior written consent of the Company.

**SECTION 5.**

**Company Agreements**

5. Company Agreements

The Company agrees:

**Compensation Schedule**

a. To pay Agent pursuant to the provisions of the applicable compensation schedules attached hereto and made a part hereof, such compensation to be in full payment for all services rendered by Agent and to be made as soon as practicable.

**Incentives**

b. To award prizes, allowances and other incentives to Agent in accordance with terms and conditions determined by the Company.

**Policy Records**

c. To furnish Agent with records relating to policies written by Agent or assigned to Agent under this agreement which in the Company's judgment will enable Agent to successfully meet the obligations imposed upon Agent by this agreement.

**SECTION 6.**

**Other Agreements**

6. Other Agreements

It is mutually agreed that:

**Independent Contractor Relationship**

a. It is the intent of the parties hereto that Agent is not an employee of the Company for any purposes, but an independent contractor for all purposes (including federal taxation) with full control of Agent's activities and the right to exercise independent judgment as to time, place and manner of soliciting insurance, servicing policyholders and otherwise carrying out the provisions of this agreement. As an independent contractor Agent is responsible for its own taxes and employee benefits. Neither the President nor any other agent or employee of Agent is an employee of the Company.

**Other Licensed Individuals**

b. Agent shall not appoint or employ any solicitor, broker or other licensed individual to act for or on behalf of the Company without the written consent of the Company.

**Assignment**

c. No party hereto shall sell, assign, pledge, or otherwise encumber or dispose of any part or all of this agreement, or any interest or rights hereunder, or any sum due or to become due hereunder without the prior written consent of all other parties hereto.

**Changes in Compensation Schedules**

d. The Company retains the right to change, alter, amend or terminate any compensation or bonus schedule attached hereto, without notice or consent, on the date specified by the Company.

Edition: April 1995
AGREINC
(All States)

AMERICAN FAMILY MUTUAL INSURANCE COMPANY
AMERICAN FAMILY LIFE INSURANCE COMPANY
AMERICAN STANDARD INSURANCE COMPANY OF WISCONSIN

5

| | | |
|---|---|---|
| **Assigned Policies** | e. | The renewal service fee will be withheld for twelve months following the date of assignment of any Mutual policy and the renewal service fee will be withheld for a period of six months on any Standard policy assigned to Agent. There will be no service fees paid on assigned Life policies. The Company may reassign any policy assigned to Agent at any time. |
| **Changes in Rates and Rules** | f. | The Company will prescribe rates, rules and regulations under which it will insure risks and the Company retains the right to change, alter or amend such rates, rules and regulations and to inform Agent at such time and in such manner as it deems practicable. |
| **Term** | g. | This agreement shall continue from its Effective Date until termination as herein provided. |
| **Termination** | h. 1) | Except as provided in paragraph 2) below, this agreement may be terminated by either the Company or the Agent with or without cause by giving written notice to the other and shall be deemed terminated as of the date specified in that notice. If both parties give notice, the earlier termination date shall control. This agreement shall automatically terminate upon the death of the Agent's President or upon the date his or her license to act as an agent for the Company is suspended, revoked or canceled; upon dissolution, liquidation, merger or consolidation of the Agent, or sale or transfer of all or substantially all of Agent's assets; or upon the filing of an assignment for the benefit of creditors or a voluntary or involuntary petition in bankruptcy by or against the Agent. |
| | 2) | After two years from the Effective Date of this agreement, the Company will give the Agent notice in writing of any undesirable performance which could cause termination of this agreement if not corrected. The Company will not terminate this agreement for those reasons for a period of six months after that written notice. |
| | | In no case shall notice of undesirable performance be required prior to termination if the performance in question involves a violation of Sec. 4.i. or any other dishonest, disloyal or unlawful conduct by the Agent or any Shareholder, officer or licensed sales representative of the Agent; nor shall any notice be required in the event that the Company terminates substantially all agreements of this type throughout the Company or in a particular state or area. |
| **Termination Review Procedure** | i. | In the event the Company terminates this agreement, Agent may request a review in accordance with the Termination Review Procedure then in effect. The Company may amend this Procedure from time to time. |
| **Policyholder Service After Termination** | j. | When this agreement is terminated, as respects policies written or serviced under this agreement, the Company's obligation to mail or deliver notices and statements to policyholders of premiums due for successive policy periods shall continue, and, as respects such policies, the Company reserves the right to appoint a successor agent or agents and to continue solicitation of policyholders for both new and renewal policies. |

Edition: April 1995
AGREINC
(All States)

AMERICAN FAMILY MUTUAL INSURANCE COMPANY
AMERICAN FAMILY LIFE INSURANCE COMPANY
AMERICAN STANDARD INSURANCE COMPANY OF WISCONSIN

6

| | | |
|---|---|---|
| Activity After Termination | k. | For a period of one year following termination of this agreement, neither the Agent nor any Shareholder, officer or licensed sales representative of the Agent will either personally or through any other person, agency, company or organization directly or indirectly induce, attempt to induce or assist anyone else in inducing or attempting to induce any policyholder of the Companies credited to Agent's account at the time of termination to lapse, cancel, replace or surrender any insurance policy in force with the Companies. In the event the "period of one year" conflicts with any statutory provisions, such period shall be the period permitted by statute. |
| Extended Earnings Conditions Precedent | l. | When this agreement is terminated, Agent will be paid Extended Earnings as set out in this contract, if as a condition precedent: |
| | | 1) Within ten days of the date of termination Agent have put in the possession of an authorized representative of the Company all policies and policy records, manuals, materials, advertising and supplies or other property which were in the Agent's possession. |
| | | 2) Agent has represented the Company under this agreement for a period of at least ten years. That period begins on the Effective Date of this agreement and continues until termination of this agreement. That period will be interrupted from the Effective Date of any Advance Compensation Plan which Agent signs until two years after the Effective Date of such plan or the termination date of such plan, whichever comes first. |
| Amount of Extended Earnings - Mutual | m. | When Agent has met the requirements of Sec. 6.l. 1) and 2) above, Agent will be paid extended earnings based upon a percentage of Mutual renewal service fees earned by Agent during the 12 months immediately preceding the month during which this agreement is terminated less any sums owed by Agent to the Company or subsidiaries. |
| | | The percentage of such Mutual renewal service fees payable under this section shall be based on the total years in the period set forth in Sec. 6.l. 2) as shown in the following table: |

| Total Years | Percentage |
|---|---|
| At least 10 years but less than 11 years | 50% |
| At least 11 years but less than 12 years | 70% |
| At least 12 years but less than 13 years | 90% |
| At least 13 years but less than 14 years | 110% |
| At least 14 years but less than 15 years | 130% |
| 15 years or more | 150% |

| | | |
|---|---|---|
| Amount of Extended Earnings - Standard | n. | When Agent has met the requirements of Sec. 6.l. 1) and 2) above, Agent will be paid extended earnings based upon a percentage of Standard renewal service fees earned by Agent during the six calendar months immediately preceding the month during which this agreement is terminated less any sums owed by Agent to the Company or its subsidiaries if not satisfied under Sec. 6.m. |

Edition: April 1995
AGREINC
(All States)

AMERICAN FAMILY MUTUAL INSURANCE COMPANY
AMERICAN FAMILY LIFE INSURANCE COMPANY
AMERICAN STANDARD INSURANCE COMPANY OF WISCONSIN

7

The percentage of such Standard renewal service fees payable under this section shall be based on the total years in the period set forth in Sec. 6.l. 2) as shown in the following table:

| Total Years | Percentage |
|---|---|
| At least 10 years but less than 11 years | 25% |
| At least 11 years but less than 12 years | 40% |
| At least 12 years but less than 13 years | 55% |
| At least 13 years but less than 14 years | 70% |
| At least 14 years but less than 15 years | 85% |
| 15 years or more | 100% |

**Extended Earnings Manner of Payment**

o. If at the time of termination the President is less than 60 years of age, the foregoing extended earnings set forth in Sec. 6.m. and n. shall be paid to the Agent in 60 equal monthly installments beginning the month following that in which this agreement is terminated.

p. If at the time of termination the President is between ages 60 and 65, Agent shall be entitled to payments set forth in Sec. 6.q. except that monthly installments payable 121 months after termination and thereafter shall be the following percentage of the payment that Agent would have received under Sec. 6.q. 121 months after termination and thereafter if Agent had terminated when the President attained age 65.

| Age at Last Birthday Prior to Termination | Applicable Percentage of Monthly Installments |
|---|---|
| 64 | 96.1% |
| 63 | 92.4% |
| 62 | 88.9% |
| 61 | 85.7% |
| 60 | 82.7% |

q. If at the time of termination the President is 65 years of age or older, extended earnings shall be paid in the following monthly installments:

| Months After Termination | Applicable Percentage of Sec. 6.o. Monthly Installment |
|---|---|
| 1 through 60 | 66.7% |
| 61 through 120 | 33.3% |
| 121 and thereafter for the President's life | 33.3% |

**Additional Payment Options**

r. Prior to the year in which Agent first receive Agent's extended earnings, if the President is 60 years of age or older or the Agent has represented the Company for a period of at least 25 years as set forth in Sec. 6.l. 2) at the time of termination, Agent may elect to receive a lump sum payment after 12 monthly payments. If Agent elects this option, Agent will be paid 12 of the monthly installments set forth in Sec. 6.o. After those 12 monthly payments, Agent will be paid a single payment in lieu of all remaining payments. That single payment will be in the amount of 43 times the monthly installment amount set forth in Sec. 6.o.

Edition: April 1995
AGREINC
(All States)

AMERICAN FAMILY MUTUAL INSURANCE COMPANY
AMERICAN FAMILY LIFE INSURANCE COMPANY
AMERICAN STANDARD INSURANCE COMPANY OF WISCONSIN

8

|                                              |     |                                                                                                                                                                                                                                                                                                                                                                                                                         |
| -------------------------------------------- | --- | ----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------- |
|                                              | s.  | If the President dies prior to Agent receiving the amount of extended earnings calculated under Sec. 6. m. and n., and Sec. 6.r. if Agent chooses that option, the Agent will receive the present value of any unpaid difference as a lump sum.                                                                                                                                                                         |
| **Amount of Extended Earnings - Life**       | t.  | When this agreement is terminated, Life will pay any remaining compensation applicable to the first policy year of any policy written by Agent. In addition, if Agent has represented the Company for at least 24 consecutive months immediately preceding termination, Agent will be paid extended earnings in the same manner and at the same time as otherwise would have been payable in compensation had this agreement remained in effect according to the following schedule: |

| In-force Paid for Premium (except annuity premiums) Computed on an Annualized Basis | Number of Years Payable |
| --- | --- |
| $5,000 to $24,999 | 3 |
| $25,000 to $49,999 | 7 |
| $50,000 or more | 11 |

If Mutual and Standard extended earnings are paid for the President's lifetime and Agent qualifies for 11 years of Life extended earnings, Agent shall be paid Life extended earnings for the President's lifetime.

In the event the President dies while Agent is receiving extended earnings, Agent shall be entitled to those payments which would have been received had the President not died but in no event shall such payments continue beyond a period of 11 years following termination of this agreement.

|                                                               |     |                                                                                                                                                                                                                                                                          |
| ------------------------------------------------------------- | --- | -------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------- |
| **Forfeiture of Extended Earnings - All Companies**           | u.  | If Agent, the President, or other officer or shareholder of Agent, do not comply with all the provisions of this agreement, and particularly Sec. 6.k. entitled "Activity After Termination," Agent shall immediately forfeit all rights to extended earnings otherwise payable by any Company thereafter. |
| **Payment Upon Death**                                        | v.  | If the President dies before this agreement is terminated and before the requirements of Sec. 6.l. 2) have been met, then the Company will pay Agent the sum of $50,000.                                                                                             |
| **Partial Assignment**                                        | w.  | 1) If Agent and the Company agree to reassign to another Agent, a Mutual or Standard policy for which Agent received new business commission, then Agent will be paid for that policy only under the following circumstances:                                        |

   a) If Agent requests the reassignment, that reassignment involves at least 200 of the policies described above, and Agent meets the requirements of Sec. 6.l. 2), Agent will be paid the amount set forth in paragraph 2).

   b) If the Company requests the reassignment and Agent meets the requirements of Sec. 6.l. 2), Agent will be paid the amount set forth in paragraph 2).

   c) If the Company requests the reassignment and Agent has not met the requirements of Sec. 6.l. 2), Agent will be paid a percentage of the amount set forth in paragraph 2) for a ten-year period. That percentage is the percentage Agent's total years of credit under Sec. 6.l. 2) bears to ten years.

Edition: April 1995
AGREINC
(All States)

AMERICAN FAMILY MUTUAL INSURANCE COMPANY
AMERICAN FAMILY LIFE INSURANCE COMPANY
AMERICAN STANDARD INSURANCE COMPANY OF WISCONSIN

9

    2) Agent will be paid as set forth in paragraph 1) an amount equal to the amounts set forth in Sec. 6.m. and n. for those policies reassigned as *if this agreement had terminated at the time of the reassignment.* Payment shall be in equal monthly installments over a period of time of more than twelve months as agreed upon by both parties. Renewal service fees for those policies reassigned will not be considered for extended earnings purposes when this agreement is terminated.

**SECTION 7.**     7. Conditions

**Conditions - Other Agreements**

a. This agreement supersedes all prior agency agreements between Agent or Agent's President individually and the Company, whether written or oral, and constitutes the entire agreement. Except as provided in this agreement, no modification of its terms may be made unless that modification is agreed to in writing by Agent and the Company.

**Records**

b. The books, records, accounting and statistical procedures of the Company shall be used and shall control in determining all matters relating to this agreement.

**Binding Provisions**

c. Rates, rules, regulations and all provisions contained in the Company's Agent's Manuals and all changes to them shall be binding upon Agent. If any inconsistency or ambiguity exists between this agreement and such rate, rule, regulation, provision or other statement or statements, whether written or oral, this agreement shall control.

**Jurisdiction**

d. This agreement shall be deemed to have been made within the State of Wisconsin and shall be interpreted and construed in accordance with the laws of the State of Wisconsin.

**Severability of Agreement**

e. If any part of this agreement shall be held invalid for any reason, such invalidity shall not affect any other part of this agreement and the parts not invalid shall remain in full force and effect.
Edition: April 1995
AGREINC
(All States)

AMERICAN FAMILY MUTUAL INSURANCE COMPANY
AMERICAN FAMILY LIFE INSURANCE COMPANY
AMERICAN STANDARD INSURANCE COMPANY OF WISCONSIN