**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

AMERICAN FAMILY MUTUAL
INSURANCE COMPANY,
AMERICAN FAMILY LIFE INSURANCE
COMPANY, and AMERICAN STANDARD
INSURANCE COMPANY,

        Plaintiffs,

v.

STEVEN G. GRAHAM and
STEVEN GRAHAM AGENCY, INC.,

        Defendants.

**ORDER**
Civil File No. 12-53 (MJD/SER)

Christina C.K. Semmer, Colton D. Long, Martin S. Chester, Justin Krypel,
Faegre Baker Daniels LLP, Counsel for Plaintiffs.

Geoffrey P. Jarpe, Maslon Edelman Borman & Brand, LLP, Counsel for
Defendants.

## I.    INTRODUCTION

This matter is before the Court on Defendants' and

Counterclaimants' Motion for Judgment as a Matter of Law and/or New

Trial.  [Docket No. 141]

This matter was tried before a jury and, on October 24, 2013, the jury returned its verdict.  [Docket No. 131]  The jury found in favor of Plaintiffs on all claims.  Defendants Steven G. Graham and Steven Graham Agency, Inc. have now filed timely requests for judgment as a matter of law, a new trial, and amendment of the Court's findings and conclusions.  Fed. R. Civ. P. 50(b) and (d), 52(b), and 59.

## II.    DISCUSSION

Defendants assert several grounds for their motion.  The grounds, and the various legal standards governing them, are presented below.

### A.    New Trial and Judgment as a Matter of Law

Rule 50 (a)(1) of the Federal Rules of Civil Procedure provides:

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
> (A) resolve the issue against the party; and
> (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

"In applying this standard, [the court] must draw all reasonable inferences in favor of the nonmoving party without making credibility assessments or weighing the evidence."  Arabian Agric. Servs. Co. v. Chief

2

<u>Indus., Inc.</u>, 309 F.3d 479, 482 (8th Cir. 2002) (internal quotation marks and

citation omitted).  Rule 50(b) further provides that a party may renew a

motion for judgment as a matter of law after trial, and that upon such

motion, the court may "(1) allow judgment on the verdict, if the jury

returned a verdict; (2) order a new trial; or (3) direct the entry of judgment

as a matter of law."

   "A new trial is appropriate when the outcome is against the great

weight of the evidence so as to constitute a miscarriage of justice." <u>Boesing</u>

<u>v. Spiess</u>, 540 F.3d 886, 890 (8th Cir. 2008) (citation omitted) (internal

quotation marks omitted).  In determining whether a new trial is

warranted, the Court may "weigh the evidence, disbelieve witnesses, and

grant a new trial even where there is substantial evidence to sustain the

verdict." <u>White v. Pence</u>, 961 F.2d 776, 780 (8th Cir. 1992).  However, the

"trial judge may not usurp the functions of a jury." <u>Id.</u> at 781.

> [T]he true standard for granting a new trial on the basis of the
> weight of the evidence is simply one which measures the result in
> terms of whether a miscarriage of justice has occurred.  When
> through judicial balancing the trial court determines that the first
> trial has resulted in a miscarriage of justice, the court may order a
> new trial, otherwise not.

<u>Id.</u> (citation omitted).

**1.      Standard for Defendants' Sufficiency of Evidence Arguments**

Minnesota law applies to Defendants' sufficiency of evidence

challenge.  See Carpenter v. Auto Club Interinsurance Exch., 58 F.3d 1296,

1301 (8th Cir. 1995).  A defendant has a high burden in making sufficiency-

of-evidence arguments, as Minnesota requires that judgment as a matter of

law be granted only if "there is no legally sufficient evidentiary basis for a

reasonable jury to find for [the non-movant] on that issue."  Minn. R. Civ.

P. 50.01(a).  Additionally, the Court is required to view evidence in the

light most favorable to the prevailing party in deciding these motions.

Bahr v. Boise Cascade Corp., 766 N.W.2d 910, 919 (Minn. 2009).  "If

reasonable jurors could differ on the conclusions to be drawn from the

record, judgment as a matter of law is not appropriate."  Id. (citation

omitted).  A jury's verdict is not easily set aside; the Court can only do so if

the verdict is "manifestly and palpably contrary to the evidence."

Bolander v. Bolander, 703 N.W.2d 529, 545 (Minn. Ct. App. 2005) (citation

omitted).

**a)      Sufficiency of Evidence of Inducement with Regard to Plaintiffs' Breach of Contract Claim**

4

At trial, the jury found that Defendants breached the Agency
Agreement with Plaintiffs because they induced or attempted to induce
customers to leave American Family after Defendant Steven G. Graham
("Graham") was terminated.  Defendants argue that they are entitled to
judgment as a matter of law or a new trial because Plaintiffs did not
present adequate evidence of inducement.  Defendants claim that
Plaintiffs' evidence was insufficient because they did not call as witnesses
any American Family customers who viewed the February 24 letter as an
inducement to leave American Family.  Defendants emphasize the
language in the February 24 letter as well as the release form they gave to
Graham's former customers.

The Court rejects Defendants' claim that there was insufficient
evidence to support the jury's findings regarding inducement.
Defendants' sufficiency of evidence argument fails to confront the fact that
section 6(k) of the Agent Agreement prohibited both inducement and
<u>attempt</u> to induce American Family customers.  The jury saw and heard
ample evidence supporting the conclusion that Defendants breached the
non-inducement provision of the Agreement, including (1) the letter that

5

Graham sent to his former customers on February 24, 2011 ("February 24 Letter"), which—despite its mention of the non-inducement provision—offered "more choices" to customers that could "be better suited for [their] needs" than American Family's insurance coverage; (2) Graham's own testimony; (3) testimony indicating that at least 591 American Family policies were cancelled and transferred to Graham; (4) testimony about American Family's attrition rate; and (5) email messages suggesting that customers would be better off with Graham.  The jury also heard arguments that supported Defendants' position regarding the case.  The Court concludes that a reasonable jury could find for Plaintiffs, as Plaintiffs presented sufficient evidence that Defendants breached the non-inducement provision of the Agreement.  Therefore, the Court rejects Defendants' sufficiency of evidence arguments and holds that Defendants are entitled to neither judgment as a matter of law nor a new trial under Federal Rule of Civil Procedure 50(b).

**b)      Sufficiency of Evidence of Dishonesty with Regard to Defendants' Breach of Contract and Breach of the Duty of Good Faith Claims**

Second, Defendants argue that there was insufficient evidence for a reasonable jury to conclude that Graham exhibited behavior that was "dishonest," which would have enabled American Family to terminate him without notice.  Section 6(h)(2) of the Agent Agreement allows American Family to terminate Graham without six months' prior notice if he were to engage in "dishonest" or "disloyal" activity.  Defendants asserted that American Family breached the Agent Agreement and breached its implied duty of good faith because it terminated Graham without six months' notice when he <u>did not</u> engage in dishonest or disloyal activity.  However, the jury found for American Family on this claim, finding that Graham did indeed engage in dishonest activity, so his termination without notice was appropriate under the Agent Agreement.

Defendants now assert that the jury's verdict on their breach of contract claim was against the weight of the evidence.  Defendants argue that Graham never exhibited "dishonesty," and they presented evidence from Graham and his employees that their customers always knew about changes made to their insurance policies.  Furthermore, Defendants point out that changes made to the policies were always inputted into the

American Family centralized data system, and because those changes were

not concealed, they were not "dishonest" based on proper interpretation of

that term.  Defendants suggest that Graham was appropriately exercising

his independent judgment as an agent, which is behavior supported by

section 7(c) of the Agent Agreement.  Defendants conclude that this use of

independent judgment did not warrant termination without notice, and

Defendants argue that the verdict supporting the termination is against the

weight of the evidence.  Therefore, Defendants request a new trial or

judgment as a matter of law.

Here, however, there are several examples of evidence upon which a

reasonable jury could rely to conclude that Graham acted in what could

reasonably be thought to be a "dishonest" manner.  The jury heard

evidence that Graham increased "Coverage A replacement cost" on

customers' homes without their consent; that he made improper multi-

vehicle discounts for customers with only one vehicle; that he manipulated

customers' vehicle symbols; and that he made unauthorized "525

endorsements."  Graham also admitted that he violated American Family's

multivehicle discount policy and authorized symbol manipulation.  (Tr.,

Docket No. 156, 869-77.)  Based on this evidence, a reasonable jury could

conclude that Graham engaged in dishonest behavior justifying

termination without notice.

That Graham inputed these things into the American Family

computer system and that he did not conceal them does not mean that his

behavior was not "dishonest."  An unwarranted discount, for example, is

something that can appear legitimate in the open; the dishonest aspect of

such a discount is that it lacks a factual basis.  One would have to know

that a customer had only one vehicle to realize the discount was

unwarranted.  That a dishonest act can hide in the open, so to speak, does

not make it less dishonest.  The dishonesty in Graham's behavior could lie

in the fact that he did not obtain customer consent for his actions and that

he knowingly violated American Family's policies.

Furthermore, the jury could have appropriately applied this

reasoning because it was properly instructed to interpret the term

"dishonest" according to Wisconsin's cannons of contract constructions.

(See Final Jury Instructions, Docket No. 131, at No. 15.)  Accordingly,

Defendants' lack of concealment argument is unpersuasive, and there was

sufficient evidence for the jury to properly conclude that Graham's

conduct was "dishonest."

Accordingly, the Court concludes that there is sufficient evidence to

support the jury's verdict as to Defendants' breach of contract claim, and

Defendants are not entitled to judgment as a matter of law or a new trial.

## 2.    Improper Testimony by Austin Caves

Defendants also argue that they are entitled to judgment as a matter

of law or a new trial because the Court erred in allowing Austin Caves's

testimony regarding inducement because it was ultimate issue testimony.

The Court concludes that Austin Caves's testimony was properly

introduced, and even if there was error in introducing the testimony, that

error was harmless.

Rule 59 of the Federal Rules of Civil Procedure applies to claims of

error at trial, and it provides a claimant must show that a new trial is

"necessary to avoid miscarriage of justice."  See Gearin v. Wal-Mart Stores,

Inc., 53 F.3d 216, 219 (8th Cir. 1994) (citation omitted).  Furthermore, errors

regarding the inclusion of evidence justify a new trial only when "justice

requires."  Fed. R. Civ. P. 61.  The improper evidence must have been "so

prejudicial that a new trial would likely produce a different result," and it must have "had a substantial influence on the jury's verdict."  Littleton v. McNeely, 562 F.3d 880, 888 (8th Cir. 2009); Harrison v. Purdy Bros. Trucking Co., 312 F.3d 346, 351 (8th Cir. 2002).  "An evidentiary error is harmless when, after reviewing the entire record, we determine that the substantial rights of the defendant were unaffected, and that the error did not influence or had only a slight influence on the verdict."  United States v. Farish, 535 F.3d 815, 820 (8th Cir. 2008) (citation omitted).

Here, Defendants argue that the Court improperly permitted Caves to give his opinion that the February 24 Letter was improper inducement and violated the Agent Agreement.  Defendants argue that this was a legal opinion on the ultimate issue in the case, and it was unsupported, as Caves is not a lawyer or an expert.  See Fed. R. Evid. 702; see also United States v. Smith, 573 F.3d 639, 655 (8th Cir. 2009) (citing Marx & Co. v. Diners' Club, Inc., 550 F.2d 505, 509 (2d Cir. 1977) ("It is not for witnesses to instruct the jury as to applicable principles of law, but for the judge.")).  Additionally, Defendants argue that, as lay testimony, Caves's statements were

11

improper because Caves did not perceive inducement and therefore lacked personal knowledge of inducement.

A review of the trial transcript indicates that the Court sustained Defendants' objections that certain questions regarding Caves's interpretation of the February 24 Letter called for conclusions without proper foundation and invaded the province of the jury.  (Tr., Docket No. 154, at 539-41.)  Where the Court overruled Defendants' objections, there was a proper foundation for Caves to expound upon whether the February 24 Letter comported with American Family's policies, from "American Family's standpoint," because the jury was made aware that Caves was not a lawyer, but was speaking on behalf of American Family based on his experience in ensuring that former American Family agents complied with their agreements.  (See Tr., Docket No. 154, at 539-43 ("[F]rom American Family's standpoint in its attempts to enforce the noninducement agreement, what about this letter violated the noninducement agreement?").)  Caves is not a legal expert, but he was offering lay opinion as to American Family's standpoint regarding the posture of the February 24 Letter under American Family's policies; this was properly "within his .

. . range of generalized knowledge, experience, and perception." <u>United States v. Johnson</u>, 688 F.3d 494, 503 (8th Cir. 2012) (citation omitted). Caves's experience lies in dealing with enforcement of American Family's non-inducement agreements.  (Tr., Docket No. 154, at 538 – 41.)

Assuming, but not deciding, that Caves's testimony was inadmissible, the Court concludes that any error in admitting the testimony was harmless.  The other direct evidence against Defendants is strong; based on Graham's testimony, his correspondence with former customers, and the February 24 Letter itself, a jury could still reasonably conclude that Defendants breached the Agent Agreement.  Weighed against this evidence, the Caves's testimony was cumulative, not pivotal or unexpected.  <u>See</u> <u>United States v. Lowen</u>, 647 F.3d 863, 870 (8th Cir. 2000). Therefore, any influence Caves's testimony had on the jury was slight, and the testimony was not "so prejudicial that a new trial would likely produce a different result."  Accordingly, the testimony, even if improper, was harmless and does not entitle Defendants to judgment as a matter of law or a new trial.

### 3.   Jury Instructions

Defendants argue that the Court erred with respect to two jury instructions.  First, Defendants assert that the Court should have given their proposed instruction on the word "dishonest."  Second, Defendants argue that the Court erred in giving Instruction Number 16 over their objections.  Defendants maintain that these errors prevented a fair trial.

Rule 59 motions based on errors in instructing the jury will be granted "only if the error [in jury instructions] misled the jury or had a probable effect on its verdict."  Acuity v. Johnson, Civ. No. 11-1748, 2013 WL 3972395, at *2 (D. Minn. July 31, 2013) (alteration in original) (quoting Burry v. Eustis Plumbing & Heating, Inc., 243 F.3d 432, 434 (8th Cir. 2001)).  "[T]he form and language of jury instructions are committed to the sound discretion of the district court so long as the jury is correctly instructed on the substantive issues in the case."  Ryther v. KARE 11, 864 F. Supp. 1510, 1521 (D. Minn. 1994) (quoting Williams v. Valentec Kisco, Inc., 964 F.2d 723, 731 (8th Cir. 1992)).

If a court has refused to adopt a proposed instruction, it only abuses its discretion if the proposed instruction "(1) correctly state[d] the applicable law; (2) address[ed] matters not adequately covered by the

14

charge; and (3) involve[d] a point so important that failure to give the instruction seriously impaired the party's ability to present an effective case."  Acuity, 2013 WL 3972395, at *2 (citing Cox v. Dubuque Bank & Trust Co., 163 F.3d 492, 496 (8th Cir. 1998)).  Finally, when potential error is analyzed, instructions "must be read as a whole and considered in light of the entire charge."  Ryther, 864 F. Supp. at 1521 (citation omitted).

### a)    "Dishonesty" Instruction

Regarding the "dishonesty" instruction, both of the parties submitted an instruction regarding the word "dishonest," and both of their proposals were based upon the Seventh Circuit case, Roth v. Am. Family Mut. Ins. Co., 567 F.3d 884 (7th Cir. 2009).   Defendants assert that the Court should have used their version of this instruction, which read:

> "Dishonest" means "deceitful behavior, a disposition to defraud or deceive, or a disposition to lie or cheat."  It requires "deceptive" conduct.  Negligence or mistake of judgment is not dishonest.

(Defs.' Proposed Jury Instructions, Docket No. 87, at No. 4.)

Plaintiffs also proposed an instruction regarding the definition of "dishonest"; their proposed instruction read:

> Under Section 6(h)(2) of the Agent Agreement, American Family was permitted to terminate Mr. Graham without giving him six months' prior notice if he engaged in what could reasonably be thought to be misconduct.

(Pls.' Proposed Jury Instruction, Docket No. 92, at No. 20.) These definitions come from Roth, which presented the former ("deceitful behavior") as a possible definition of "dishonest," but ultimately applied the latter ("misconduct") as its definition. See Roth, 567 F.3d at 887.

The Court rejected both of these proposed instructions, and instead of defining the term "disloyal," the Court instructed the jury on contra preferentum, using a model jury instruction from Wisconsin. This instruction provided:

> The parties dispute the meaning of the following language in their contract: "dishonest" and "disloyal."

> It is your duty to interpret the contract to give effect to what the parties intended when they made their agreement. In determining the meaning of the language, you should consider:

> -- the words in the dispute,
> -- the purpose of the contract,
> -- the circumstances surrounding the making of the contract
> -- the subsequent conduct of the parties, and
> -- other language in the contract.

> If you are unable to decide the intention of the parties after considering these factors, then you should interpret the

disputed language against the party who prepared the contract.

(Final Jury Instructions, Docket No. 127, at No. 15.)  This <u>contra preferentum</u> instruction was also requested by Defendants.  (Defs.' Proposed Jury Instructions, Docket No. 87, at No. 1.)

The Court's final instruction regarding the word "dishonest" comports with Wisconsin law.  First, the <u>contra preferentum</u> instruction is taken from Wisconsin's model jury instructions and its case law.  Wisc. Civ. Jury. Instructions C'mty, II Wis. JI-Civil 2051 (2007; sup. 2013); <u>see</u> <u>Capital Invs., Inc. v. Whitehall Packing Co.</u>, 280 N.W.2d 254, 259 (Wis. 1979) (holding that canons of contract construction should be applied to ambiguous contract terms).  Second, the Court, upon finding "dishonest" to be "fairly susceptible of more than one reasonable interpretation," and therefore ambiguous, "properly submit[ted] the question to the jury and instruct[ed] the jury on principles of contract interpretation."  <u>See</u> <u>Am. Family Mut. Ins. Co. v. Hollander</u>, 705 F.3d 339, 355 (8th Cir. 2013). Finally, Wisconsin law provides that the <u>contra preferentum</u> instruction cannot be given along with an instruction that defines one of the terms it notes is disputed.  <u>See id.</u>  Therefore, it would be error for the Court to give

17

the <u>contra preferentum</u> instruction—which asks the jury to interpret the word "disloyal"—while also giving another instruction that defines the term "disloyal."  Accordingly, choosing to adopt one of Defendant's proposed instructions while rejecting the other was appropriate under Wisconsin law.

The Court concludes that it did not err in providing the <u>contra preferentum</u> instruction and rejecting Defendants' proposed instruction regarding "dishonesty."  The Court concludes that the <u>contra preferentum</u> instruction was a correct statement of law, and it did not prejudice Defendants.

### b)   Instruction Number 16

Defendants also argue that they are entitled to a new trial because the Court gave Final Jury Instruction No. 16, which read:

> Under Section 6(h)(2) of the Agent Agreement, American Family was permitted to terminate Mr. Graham without giving him six months' prior notice if he engaged in what could reasonably thought to be "dishonest" or "disloyal" activity.

(Final Jury Instructions, Docket No. 127, at No. 16.)  Defendants assert that this instruction was inappropriate because the question of whether

18

Graham's conduct was actually "dishonest" or "disloyal" was disputed, and the instruction created a presumption in favor of Plaintiffs version of the facts.

The Court concludes that Final Jury Instruction Number 16 effectively communicates Wisconsin's deferential "reasonableness" standard given to employers who terminate employees based upon specified contractual terms.  Phillips v. Am. Family Ins. Co., 345 F. Supp. 2d 1187, 1199 (D. Kan. 2004).  The instruction did not prejudice Defendants because it merely provided the terms of the Agent Agreement, and it did so in a conditional fashion; the termination without notice was only permissible if the jury were to find it reasonable that Graham engaged in the prohibited conduct, which they did.  Reading the jury instructions as a whole and considering Final Instruction Number 15, the Court concludes that the jury understood that its task was to consider whether Graham engaged in "dishonest" or "disloyal" behavior before concluding whether Plaintiffs' termination of him was proper.  Jury Instruction Number 16 was properly given and did not prejudice Defendants.

**B.     Motion to Amend Findings**

Defendants request that the Court amend its findings, under Federal Rule of Civil Procedure 52(b), with respect to the liquidated damages provision in the Agent Agreement, which awards as damages all of the Extended Earnings payments American Family made to Graham after his departure from American Family.  Defendants argue that the Court—after holding a special hearing on the reasonableness of the Agent Agreement's liquidated damages clause—should amend its findings on its enforceability.  In sum, Defendants' main argument is that Plaintiffs' damages expert, Joseph Kenyon, made "flawed and speculative" assumptions in calculating actual damages to compare to the liquidated damages amount.  This argument was presented before trial and during the liquidated damages hearing, and it was thoroughly examined by the Court.

To prevail on a motion to amend findings under Federal Rule of Civil Procedure 52(b), a party must (1) demonstrate why the court should reconsider its previous decision, and (2) provide facts or law of a strongly convincing nature.  Dale & Selby Superette & Deli v. U.S. Dep't of Agric., 838 F. Supp. 1346, 1347 (D. Minn. 1993) (citation omitted).  "A motion

made pursuant to Rule[] 52 . . . is not intended to routinely give litigants a second bite at the apple, but to afford an opportunity for relief in extraordinary circumstances." Id. at 1348. These motions are meant "to correct manifest errors of law or fact or, in some limited situations, to present newly discovered evidence." Id. at 1347 (citation omitted).

Defendants have failed to provide a compelling basis for the Court to reconsider its earlier decision, which held that the liquidated damages provision was reasonable and enforceable. (See Order, Docket No. 124.) Defendants provide no new arguments now from those provided in their briefs and at the hearing. Furthermore, the Court will not repeat its rationale for upholding the liquidated damages clause, as it was explained in its October 17, 2013 Order. (Docket No. 124.) Because the Court has already considered and weighed Defendant's arguments, they fail to be "of a strongly convincing nature." The Court finds no manifest errors of law and fact in its decision to uphold the liquidated damages provision as a reasonable provision, and Defendants do not refer to any newly discovered evidence that might affect the Court's decision. Accordingly,

the Court maintains its original findings and concludes that there is no

basis for amending its ruling on the liquidated damages clause.

Accordingly, based upon the files, records, and proceedings herein,

**IT IS HEREBY ORDERED:**

Defendants' Motion for Judgment as a Matter of Law and/or New

Trial [Docket No. 141] is **DENIED**.

Dated:   April 22, 2014                    s/ Michael J. Davis
                                           Michael J. Davis
                                           Chief Judge
                                           United States District Court